UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                  Case No. 22-CR-28

RAYMON A. FULLER, JR.,

    Defendant.

---

### SENTENCING MEMORANDUM

---

Raymon A. Fuller, Jr., by counsel, hereby submits this sentencing memorandum in support of his request for a sentence of one month on Count One, Hobbs Act Robbery, to be followed by 84 months on Count Two, brandishing a firearm during a crime of violence, for a total sentence of 85 months. A sentence of 85 months is sufficient but not greater than necessary to meet the purposes of sentencing.

**I.    Offense**

The PSR includes a number of paragraphs regarding the offense, however it does not provide the whole story of what happened at the time of this robbery.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

While Fuller admits to pulling out a firearm and taking the property of the individuals in the car, he did not act alone. Lamont Brown [Brown] participated in these actions with him. Further, Fuller wants it clear that he only pulled out his gun in response to one of the males in the car pulling out his gun first. Fuller admits he and Brown went to buy marijuana and pills. Brown made arrangements with a female he knew, Kayla, to buy marijuana and Fuller went along to buy pills. Brown told the police he and Fuller brought guns with them because word on the street was Kayla had robbed someone she was supposed to sell weed to a few weeks prior.

When Brown and Fuller arrived, the two females in the car got out and the two males remained in the car. Brown and Fuller go to the car to do the marijuana deal. Brown wants the guy in the back seat to weigh it up to make sure he is getting what he is paying for. The guy in the front seat of the car, the one Fuller is sitting next to, says they are from Milwaukee and they don't do things like that. Fuller sees the guy in the front bend down and pull out a gun to his lap. Fuller pulls out his gun, yells gun, and grabs the gun from the front seat guy. Brown jumps out of the car with his gun and starts pointing it at the guys in the car. Fuller grabs the gun from the guy in the front seat. The guy in the back seat tells Brown everything he has is in the backpack, and gives the backpack to Brown. Fuller goes from front

to back seat to make sure there are no more guns in the car, all while Brown has the two guys in the car with their hands up and is yelling them not to move. Fuller grabs the guy's wallet from the front seat and Fuller and Brown take off running. Fuller gets rid of the guy's gun that same day.

During the ensuing months, Fuller and Brown receive texts from the girl Kayla, telling them to return the gun and her boyfriend's wallet or they will go to the police. Fuller and Brown don't return the property because Fuller dumped the gun and wallet that same day. Fuller took the backpack and drugs in the back pack to his house. All of this took place in August, 2020. In November, 2020, Kayla goes to the police with the video, three months after the robbery took place.

Of note are a few additional details regarding the offense. First, Brown was interviewed a number of times, giving inconsistent statements about what happened and not being straight about either his own participation or even identifying Fuller as his co-actor. Eventually, Brown did identify Fuller, as well as providing details stated above about what took place that day. Second, the PSR and police reports describe Fuller wearing a face mask, however it should be made clear it was a black face mask like those individuals have been wearing during COVID, not a black ski mask or full face mask. As this was not a planned robbery, Fuller did not show up with a face mask for purposes of disguising his identity,

but rather was wearing a black mask because of COVID. As the video made clear, the black mask did little to hide Fuller's face, especially because it was down around his chin and neck throughout most of the video. Third, the police find a gun in the backpack with the drugs when they search Fuller's home in January of 2021. That gun is not the one Fuller took from the guy in the front seat, nor is it the gun seen in the video being carried by Fuller. The gun taken from the backpack actually belongs to Fuller's brother who is ex-military and can possess guns. Fuller's brother contacted police at a later date to provide details about his gun and has made arrangements with them to retrieve it at the close of this case. Finally, throughout the video Fuller has a gun, however at no point does he point it at anyone. Fuller is carrying and holding the gun along his leg, pointing it down. Fuller is also not the one yelling at the two men in the car and making statements about taking out the two men, that is Brown. The video makes this clear, as well as the fact that it is Brown pointing the gun at both of the men in the cars. Again, Fuller is not supposed to have a gun and he knew that. However, he also wants the court to know he would have never pulled out his gun and brandished it if the male in the other vehicle didn't pull his gun out first.

 **II. Co-Actor**

 This offense involved Fuller and Brown. While Fuller accepts responsibility

for what he did, he certainly is frustrated at the fact that Brown received a lesser charge and even lesser sentence. Brown is the one who had the connection to Kayla. Brown is the one who had reached out to buy the drugs from Kayla, while Fuller went along. Brown was also the one that pointed the gun at the people while Fuller held his at his side pointing the gun down towards the ground. Brown was the one yelling at the two men in the video and making statements about putting them down and taking them out. Ultimately, Brown received a reduced charge from the state, theft of property from a person, and a sentence of two months in jail, while Fuller is charged here in federal court and is facing a minimum of 7 years in prison. The CCAP printout from Brown's case is attached as Exhibit A.

III. **History and Characteristics**

Fuller is 26 years old and grew up in a single parent home on the south side of Chicago. Fuller's mother tried to do the best she could but living in that area had its own struggles. Englewood, the neighborhood where he grew up, was filled with violence, drugs, guns, shootings, and murders. Paragraph 49 provides some insight as to that neighborhood in terms of the violence that to this day is rampant. At age 15, Fuller was shot in a drive by shooting. He recovered but based on where he grew up and him being shot, is hyper vigilant when it comes to protecting himself. About three years ago, Fuller's mother moved the family to the greater

Oshkosh area where he has lived with her since.

Fuller has a great relationship with his mother and is described by most who know him best as a family man. Letters from friends and family are attached as Exhibit B. Fuller knows she did everything she could to try to shield him from the violence surrounding them in Chicago, but doing so as a single parent is difficult. Fuller's father was there when he was young, but he was abusive towards Fuller's mother. Fuller witnessed that abuse and eventually, Fuller's mother decided the dysfunction and harm he brought to their home was not worth him being there. Fuller has not had any relationship with his father since he was young. *See* PSR @ ¶¶ 50-55.

Fuller is a father to 3-year-old twins who live with their mother in Chicago. While Fuller does not have custody of his twins, he has been involved in their lives and remains close with their mother. He also helps provide for them financially. Fuller hopes he can continue to remain in touch with them while in custody through their mother so there is a foundation to reestablish his relationship with them upon his release. The twins' mother provided a letter of support that is included in Exhibit B.

With such a difficult childhood, Fuller still managed to get his high school degree. He has worked, however, most of his work has been manual labor and

minimal pay. Fuller wants to use his time in custody to pick up a trade so he can be in a better position to support himself and his family upon his release. Fuller's mom relayed the same to probation at paragraph 54 of the PSR, as well as her believe that Fuller would benefit from counseling to deal with some of the trauma he suffered from throughout his childhood. Fuller indicated that although he doesn't believe he suffers from any sort of mental illness, if counseling was offered, he would take advantage of it. Fuller said the same with regards to substance abuse treatment, indicating he was using marijuana at the time he committed this offense. In fact, this offense involved he and Brown going to buy drugs. While Fuller has been able to stop using marijuana in the past, he did return to it. And for Fuller, any counseling or programming that helps him to better himself and put him on a better path when he gets out, he is open to participating in.

Finally, Fuller has only one prior conviction, a robbery in Cook county in 2014 when he was 19 years old. While Fuller admits to participating in the robbery and pled guilty to it, again he committed it with a co-actor. And while his co-actor had a gun, Fuller did not. Fuller received a 3-year prison sentence but was released to parole after approximately 15 months. Fuller completed his term of parole and was discharged prior to moving to Wisconsin.

## IV. Purposes of Sentencing

The court must impose a sentence that is sufficient but not greater than necessary to comply with the sentencing factors in 18 USC § 3553(a). The sentence must also reflect the seriousness of the offense, provide just punishment, deter both Fuller and others from committing crimes, protect the public and provide needed rehabilitation for Fuller.

This is a serious offense but it is also important to keep in mind that although guns were involved, the guns weren't fired and no one got hurt. In fact, unlike Brown, Fuller didn't even point a gun at anyone, nor did he verbally threaten anyone. To reiterate what was addressed above, it was not Fuller's intent to go and rob anyone that day. His intent was to buy drugs and it was not until the other person pulled out his gun that Fuller pulled out his, took the gun and other items, and ran off. And a seven-year sentence is serious punishment. Further, while programming is important for Fuller and he is eager to participate in it, he has no possible way of reducing his sentence based on the nature of the charge. That is significant, especially for someone so young who has only spent a little over one year in custody before.

Deterrence in this case should focus on specific deterrence, that is, on Fuller himself. The statute requires adequate deterrence, and while the amount of

adequate deterrence is impossible to quantify, a sentence of seven years in prison should be sufficient to provide deterrence to him, as well as the public. For Fuller, it also is important to note that he understands should he be involved in any sort of criminal activity like this again, any crime involving guns, he will be facing significantly more time in prison. In addition to the time in custody, the term of supervision to follow also promotes deterrence, and for a longer time. Supervision always carries the very real possibility of revocation. Because supervision is in the community, the deterrence it gives is practical. In other words, being on paper is day-to-day real world deterrence, because a defendant knows that his or her supervising officer will be on the lookout. Adequate deterrence is the benchmark, and the sentence proposed here will provide the deterrence required by § 3553(a).

Protection of the public is always something to consider in a case involving guns. However, as this is not typical of robbery cases we see, it is likely not as much a concern here. Not to belabor the point, but Fuller did not hurt anyone and only pulled out his gun after the other guy pulled out his. Further, Fuller did not point his gun at anyone. If concern for the public was the main concern here, Brown, the one who pointed the guns at people's heads would not have received a two months' sentence. Seven years followed by years of supervised release is sufficient to address any concerns regarding protection of the public.

So in the end, the issue is what is just punishment for Fuller's behavior here? It is clear that Fuller needs to serve time in prison and he will. While the government is seeking a sentence of 1 year/1 day on Count One to be followed by 84 months as required by statute on Count Two, Fuller is seeking approximately nine months less. At nine months less, a sentence still over 7 years, does not diminish the seriousness of this offense and is just punishment.

V.   **Conclusion**

Fuller admits that he is where he is today because of the actions and the choices he made on August 28, 2020. Fuller also knows that he wouldn't have been in that position unless he was buying drugs. That fact is not lost on him and he is well aware that drugs, even marijuana, have caused negative consequences for him. Fuller will be released from prison in his 30's. His twins will be adolescents. Fuller hopes to use his time in prison to pick up a trade and participate in other programming so he will be better equipped to provide financially and emotionally for himself and his children when he is released.

Fuller requests a sentence of one months on Count One to be followed by 84 months, the mandatory minimum, on Count Two for a total of an 85 months sentence. Fuller realizes this is less than the guideline range, however based on the particular facts of the case involving the robbery, and the fact that Brown

only received a two months sentence, it is just punishment and sufficient but not greater than necessary to meet the purposes of sentencing.

Fuller is asking the Court to include the following recommendations on the Judgement: placement in the BOP 500 hour RDAP program and placement at FCI-Oxford. There is no doubt that drugs were involved in the offense here and have caused problems for Fuller. And because he is so young, any programming to address these issues now will hopefully have a long standing impact on him in the future. As for the request for FCI-Oxford, that is closest to his family and support system, as well as having programming and vocational training that he can benefit from.

Counsel has reviewed the conditions of supervised release appearing at pages 18-22 of the PSR with Fuller who has no objections to them based on the reasoning included therein. Further, Fuller waives reading of them in open court understanding a full copy of them will be reviewed and provided to him when he begins his period of supervised release.

Dated at Green Bay, Wisconsin, this 19th day of August, 2022.

>Respectfully Submitted,
>
>**s/ Krista Halla-Valdes**
>Krista Halla-Valdes, WI Bar #1091984
>Attorney for Raymon A. Fuller, Jr.
>Federal Defender Services of Wisconsin, Inc.
>801 E. Walnut Street, Second Floor
>Green Bay, Wisconsin 54301-4401
>Tel: 920-430-9900
>Fax: 920-430-9901
>krista_halla-valdes@fd.org

n:\cases-open\e-f\fuller jr., raymon a. - 22-041\sentencing\sent memo draft2.docx