```
 1                  UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF WISCONSIN
 2                         GREEN BAY DIVISION
   _____
 3
     UNITED STATES OF AMERICA,          )
 4                                      )
                        Plaintiff,      )   Case No. 22-CR-28
 5                                      )
         v.                             )   Green Bay, WI
 6                                      )
     RAYMON A. FULLER, JR.,             )   August 22, 2022
 7                                      )   1:31 p.m.
                        Defendant.      )
 8   _____

 9                   TRANSCRIPT OF SENTENCING HEARING
                 BEFORE THE HONORABLE WILLIAM C. GRIESBACH
10                     UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiff:
     UNITED STATES OF AMERICA:          United States Dept. of Justice
14                                      (ED-WI)
                                        By:  MR. DANIEL R. HUMBLE
15                                      Office of the US Attorney
                                        205 Doty Street, Ste. 301
16                                      Green Bay, WI  54301
                                        Ph:  920-884-1066
17                                      daniel.humble@usdoj.gov

18   For the Defendant:                 Federal Defender Services of
                                        Wisconsin
19                                      By:  MS. KRISTA HALLA-VALDES
                                        801 E. Walnut Street, 2nd Floor
20                                      Green Bay, WI  54301
                                        Ph:  920-430-9900
21                                      krista_halla-valdes@fd.org

22

23   U.S. Official Transcriber:  JENNIFER L. STAKE, RDR, CRR
     Proceedings recorded by electronic recording, transcript
24   produced by computer-aided transcription.

25


                                                                      1
```

```
 1                    TRANSCRIPT OF PROCEEDINGS
 2                  (Transcribed from audio recording.)
 3           THE CLERK:  The Court calls Case No. 22-CR-28, the
 4   United States of America versus Raymon A. Fuller, Jr., for a
 5   sentencing.  May I have the appearances, please.
 6           MR. HUMBLE:  Dan Humble for the Government.  Good
 7   afternoon, your Honor.
 8           THE COURT:  Good afternoon.
 9           MS. HALLA-VALDES:  Good afternoon, Judge.  Krista
10   Halla-Valdes on behalf of Mr. Fuller, and he is present.
11           THE COURT:  Good afternoon.
12           MR. KOEHLER:  Good afternoon, your Honor.  Brian
13   Koehler on behalf of probation.
14           THE COURT:  All right.  Well, good afternoon, all.  So
15   Mr. Fuller's before the Court today for sentencing on two
16   counts.  Count 1 is a Hobbs Act robbery that carries up to 20
17   years in prison, $250,000 fine.  Count 2 is brandishing a
18   firearm during a crime of violence.  That's a seven-year
19   mandatory minimum, consecutive to the sentence imposed in Count
20   1, up to life with also a maximum fine of $250,000.  The
21   presentence report is filed along with a sentencing memorandum
22   from the defense and some letters from family and supporters of
23   Mr. Fuller.
24       Mr. Humble, is the Government in agreement with the factual
25   statements in the presentence report?
```

1    MR. HUMBLE:  Yes.
2    THE COURT:  Are you in agreement with the recommended
3 guideline calculation for Count 1?
4    MR. HUMBLE:  Yes.
5    THE COURT:  Ms. Halla-Valdes, have you gone over the
6 presentence report with your client?
7    MS. HALLA-VALDES:  I have, Judge.
8    THE COURT:  Are you in agreement -- is there any
9 objection from the defense as to the factual statements in the
10 report?
11    MS. HALLA-VALDES:  No, Judge.
12    THE COURT:  And are you in agreement with the
13 guideline calculation?
14    MS. HALLA-VALDES:  We are.
15    THE COURT:  Okay.  I will adopt, then, the factual
16 statements in the presentence report as my findings of fact.
17 And I will also adopt the guideline calculation for Count 1.
18 Total offense level is 18.  The criminal history category is
19 II.  The resulting guideline range for Count 1 is 30 to 37
20 months.  Of course, Count 2 is seven years consecutive by
21 statute.  So that's the sentence -- the guideline range, the
22 starting point in the sentencing determination.
23    Mr. Humble, I'll hear from the Government.
24    MR. HUMBLE:  Your Honor, the Government's asking for
25 the 366 days on the Hobbs Act robbery in Count 1.  When you

look at the nature and circumstances of this offense, I think this was a recipe for disaster. It was inherently dangerous to have not only Mr. Fuller there with a 9mm with the extended magazine, but also with the other side or, frankly, the people he was meeting up with, whether it was for a marijuana deal that turned into a robbery or it was intended to be a robbery all along, they now have a weapon. These are how homicides start. These are how shootings start. So I think this was a very dangerous situation.

With regard to the history and characteristics of Mr. Fuller, you know, he does have that prior conviction for his involvement in an armed robbery in Chicago. As the Court saw from the PSR, he has a pending battery, which he picked up after this armed robbery situation, involving a family member where he struck the victim repeatedly, ripped out his hair, left his shirt blood soaked. That happened while was out on release on the state charge for the robbery which ultimately was taken over by the federal government.

As the plea agreement notes, your Honor, the Government is not pursuing an additional charge for felon in possession of a firearm from a June 29th, 2021, incident at a sporting goods store where Mr. Fuller was caught on camera holding a firearm. It was part of a larger ATF straw purchase investigation. And, again, as the PSR points out in Paragraph 20, talks about the fact that another individual's phone had images -- several

4

| | |
|---|---|
| 1 | images of Mr. Fuller possessing, for lack of a better term kind |
| 2 | of glorifying the possession of firearms along with stacks of |
| 3 | cash.  I think there's a strong need for deterrence for Mr. |
| 4 | Fuller personally but also to send a message that these types |
| 5 | of crimes -- firearms, robberies, firearms and drug deals -- |
| 6 | will come along with a hefty prison sentence. |
| 7 | And, finally, for the protection of the community, I -- |
| 8 | let's not kid ourselves; we're not far apart, the defense and |
| 9 | the Government here.  The driving factor here is the seven |
| 10 | years in Count 2.  But I think to give the one month would |
| 11 | unduly depreciate the seriousness of the robbery, especially |
| 12 | since he hasn't exactly approached this case with unclean hands |
| 13 | given that record that I just recited.  So I'm asking that you |
| 14 | impose the 366 days on Count 1.  And obviously you have to |
| 15 | impose 84 months on Count 2. |
| 16 | THE COURT:  Two questions, Mr. Humble.  The battery |
| 17 | appears to have been dismissed without prejudice in August. |
| 18 | Does that still -- that's from the presentence, Paragraph 47. |
| 19 | MR. HUMBLE:  Um. |
| 20 | THE COURT:  Was it reissued? |
| 21 | MR. HUMBLE:  I did not catch that.  Perhaps I |
| 22 | misspoke.  I thought it was still in place.  But maybe it was. |
| 23 | THE COURT:  Okay.  And Ms. Halla-Valdes talked about |
| 24 | the codefendant in her sentencing memorandum.  He received two |
| 25 | months for the same offense, same conduct?  What's going on? |

```
 1              MR. HUMBLE:  I came in far after this one, as can you
 2   see, because it was a 2020 robbery.  He was under the age of 18
 3   at the time, so there's no way he could have been prosecuted
 4   federally.
 5              THE COURT:  Uh-huh.
 6              MR. HUMBLE:  I don't know what -- what they were
 7   thinking.  Ms. Halla-Valdes and I talked about that.
 8              THE COURT:  Uh-huh.
 9              MR. HUMBLE:  Again, it's one of those situations where
10   I don't think it would have happened had it been -- had I had
11   the opportunity to go after him.  But, again, being under 18,
12   it really wasn't that opportunity.
13              THE COURT:  Okay.
14              MR. HUMBLE:  But I'm sorry I don't know more of the
15   background.
16              THE COURT:  Yeah.  Well, that explains some things.  I
17   mean, the age wasn't clear either.
18         Okay.  Ms. Halla-Valdes.
19              MS. HALLA-VALDES:  Judge, I submitted the sentencing
20   memorandum, and I don't honestly have a lot to add other than
21   the sentencing memorandum.  Most of all -- and the Government
22   said it, we're not far off.  I'm asking for the one month on
23   Count 1.  And the main reasons I'm asking for it is, first of
24   all, because of the offense itself.  And I go into detail
25   explaining it because for Mr. Fuller, his indications and what
```

he has stood by from the beginning, even when charged in state court, is if the other person hadn't have pulled the gun first, he wouldn't have pulled the gun.

Now, that's setting aside he was not supposed to have a gun. He understands that. But the fact is that it only turned into a -- nobody went there with the intention to do a robbery. It turned into that when the other actor, the person in the front seat, pulled a gun. And that's when Mr. Fuller reacted.

The second is the treatment of his coactor, Lamont Brown. I put in there that he only got the two months. The fact is that even his conduct, if you watch the video, is more egregious, more disturbing. He's the one pointing the guns at people. He's the one making statements about take them out. He's the one that the people are begging to not shoot them.

So when looking at all of that, I do think -- as well as looking at Mr. Fuller's background. I understand he has that prior conviction, but he did serve a sentence for it. If you look at that prior conviction, he -- it was a participation in a robbery. Again, he was not the person with the gun, but he did participate in the robbery. He plead guilty, and he did serve a sentence for it.

But he was released from prison in March of 2016. And until these actions in 2020, he hadn't been in trouble. He does understand the seriousness of this. Deterrence-wise, not only for the public, but for Mr. Fuller, he understands that

should he be involved with guns again, he's likely facing an armed career criminal charge, and he's at a minimum mandatory 15. He's young. Seven years is a long prison sentence. 84 months is a long prison sentence, especially when one considers the fact that because of the charge, he has no ability, whether he does programming or not, to get any form of reduction. We asked for a recommendation for RDAP. However, because of the charge, he doesn't get that year off. He also doesn't get earned time credits under the First Step Act even if he does participate in programming. So seven years is significant.

I'm asking for the year, like I said, because I think overall that 85-month sentence we're asking for is sufficient but not greater than necessary to meet the needs of sentencing. It's a serious punishment. It's a serious offense. But I do think that that does provide protection of the public, especially when joined with any additional supervised release. I do think it provides deterrence, and I don't think it diminishes at all the seriousness of the offense.

Like I said, seven years in custody is a long time in custody for someone who is in his late 20s. He's young. He'll get out in his 30s, but he certainly will be older. He'll mature. And as I said previously, he understands just how serious his record will be in terms of moving forward in his life.

We did discuss the conditions of supervised release. We

waive reading of them at this time.  We went through them.  We have no objections based on the reasons cited therein.  In addition, as I explained to Mr. Fuller, he understands a copy will be provided at the time of his release.

I also, besides the BOP RDAP 500-hour program, because Mr. Fuller acknowledges that were he not involved in using, this wouldn't have happened because he wouldn't have been in that location, but, also, I'm asking for a recommendation for placement at Oxford.  That is closest to his family.  The letters show that he does have family support, and he wants to continue through with that family support.

        THE COURT:  Mr. Humble, what's -- what's your response to the argument that the people in the car had guns and this turned into a robbery?  That doesn't seem consistent with what the victims reported.  Is there any evidence one way or the other or --

        MR. HUMBLE:  They certainly had a weapon, and --

        THE COURT:  The people in the car?

        MR. HUMBLE:  Yes.  Absolutely.  There's no doubt watching the video that was the case.

        THE COURT:  Uh-huh.

        MR. HUMBLE:  Again, I don't know why you'd go armed to a marijuana purchase unless there's something more to it --

        THE COURT:  Yeah.

        MR. HUMBLE:  -- at that point.  So, again, I -- I

1  don't know with the intent, that's certainly not what the
2  victims --
3          THE COURT: Yeah.
4          MR. HUMBLE: -- report initially. But then again, I
5  don't think they were completely honest about what they were up
6  to when they talked to the police the first couple times.
7          THE COURT: Right.
8          MS. HALLA-VALDES: Judge, I will point out that Mr.
9  Brown, at least in talking to his state court lawyer, some of
10 the benefits he was given was because he made a statement that
11 they deemed to be credible. He indicated that, in fact, this
12 person who they were doing the deal with had robbed somebody
13 weeks before and that's the reason they brought the guns,
14 because they were afraid of getting robbed. I'm just basing it
15 on what he says and the statements he gave.
16         THE COURT: Okay. Thank you.
17    Mr. Fuller, anything you want to say before I impose a
18 sentence?
19         THE DEFENDANT: No, your Honor.
20         THE COURT: Okay. Well, I'm to consider the
21 guidelines; but, of course, the guideline here, nobody's
22 arguing for a guideline sentence on Count 1 because of the
23 seven-year mandatory sentence on Count 2. So, really, this is
24 one of those cases where you look at the nature and
25 circumstances of the offense, as we do in all cases, and then

1   the history and character of the defendant and then try to
2   impose a sentence that accomplish the goals of imposing just
3   punishment, providing deterrence -- and certainly gun crimes
4   are one of the crimes we certainty want to deter very strongly,
5   very vehemently -- protection of the public, which is also a
6   big factor in gun crimes and then rehabilitation which, you
7   know, that's ultimately up to the defendant.  But we try to
8   offer whatever services can be offered to help them.
9        But turning first to the nature and circumstances of the
10  offense, you know, regardless of the version you accept, this
11  is a serious offense.  I don't know any reason why if somebody
12  pulls a gun you have to rob them.  You could simply continue
13  the transaction or walk away.  But the -- the argument that
14  this was a robbery from the beginning, at least in the eyes of
15  the -- the victims, the so-called victims who aren't very
16  victim like in this case in any event, it certainly has some
17  credence.
18       The defendant and his partner go -- both go with a gun.
19  And he does have a prior armed robbery.  The fact is, yes, he
20  did hold the gun.  We don't know a lot of the circumstances of
21  that one.  But nevertheless, going -- first of all, he
22  shouldn't have a gun in light of the first conviction.  He has
23  no business possessing a firearm.  He has no business going to
24  a drug deal to buy drugs.  And he has no business robbing
25  people when he perceives them, if he -- assuming he perceives

them as being a danger to him and his friend. So he put himself in this position.

Mr. Brown's sentence as a youthful offender, maybe giving some -- some evidence against the other people, I don't know, it's hard to measure these things where I only see one of the defendants. Just the face of the record, though, shows I'm dealing with a defendant who's not 18 or under 18 at the time he commits the offense, but who is now 26 years of age, has a prior prison stint from Chicago with very little employment history and, frankly, not a great record in terms of contributions.

I know his mother says wonderful things about him, but mothers are like that. And, frankly, his behavior in this case and in the prior robbery certainly suggests that he is not the sterling character that the letters of support suggest.

Still I'm looking at a mandatory minimum seven, and the question is: What should go with it? I'm inclined to agree that a one-month sentence for an armed robbery seems to depreciate the seriousness of the offense. On the other hand, I don't see why I'm going to add to the seven years where I'm really looking at the total sentence to try to come to a fairer sentence. I think what I'm going to do is basically cut the baby in half. I'm going to impose six months on Count 1, the seven years or 84 months on Count 2.

That's in between what the parties have asked for. I think

to -- I think the robbery is an important crime that should not be ignored or simply ignored. Seven -- or six months is certainly a very light sentence when the guideline range is 30 to 37. But I think when one considers the fact that there's a seven-year concur -- consecutive sentence on top of that, then I'm looking at a total of 90 months for this crime for this person at this stage in his life. I think it's a reasonable sentence. It accomplishes those goals of imposing just punishment.

And this is a crime deserving of punishment. This could easily have been homicides. This could have been more -- more bloodshed. And, you know, I -- as I read the presentence, the defendant's mother moved up here to try and get away from the bloodshed in Chicago. Last thing that should be happening is bringing it here. And I think that's a strong message that ought to be sent. And certainly a deterrent message of a 90-month sentence for this type behavior is significant.

I'll also say protection of the public is at issue here, and I impose the three years of supervised release on Count 1. I see Count 2 carries up to five years of supervised release, and I'm going to impose that five years of supervised release on Count 2. Obviously it's concurrent with Count 1. But federal supervision especially under supervision that's provided by the probation agents in this district, we will know if Mr. Fuller goes back to the patterns of behavior which

```
 1   brought him to this point, and we will react accordingly, which
 2   means back to prison if he violates conditions of supervision.
 3       I'm going to impose the recommended conditions of
 4   supervision without opposition.  I'll accept the waiver of the
 5   reading.  I'm adopting the conditions and the rationale for
 6   those conditions as set forth in the presentence report.
 7       I impose a $100 special assessment on each count and waive
 8   fine on each count.  He doesn't have the financial wherewithal
 9   to pay a fine.
10       The judgment of conviction should also include a
11   recommendation for the RDAP program.  And was there another
12   recommendation?
13             MS. HALLA-VALDES:  FCI Oxford, Judge.
14             THE COURT:  FCI Oxford so he can he have family
15   support.  I think that's important as well.
16       You know, if Mr. Fuller were coming here as a 20-year-old,
17   that would be different, without a prior armed robbery -- or
18   robbery conviction, not an armed robbery but a robbery
19   conviction.  But he's had this.  He's had prison, and he's back
20   with a very serious offense.  So I think this sentence makes
21   some sense here.
22       Mr. Fuller, I -- I see -- one thing -- I don't deny the
23   letters and I find credible the letters describing your
24   personality.  You're a healthy young man.  You're bright.  And
25   obviously you've got some qualities that people find very
```

14

1     attractive.  You could be -- really make something of yourself.
2         There is, right now, a lot of people looking to hire
3     people.  You could show up.  I think it was Woody Allen that
4     said 90% of it is showing up.  Show up for work.  Show that
5     you're good at your job.  Show that you're serious about doing
6     it.  And don't wait till you get a better job or till you
7     convince them you're worth more.
8         But otherwise, if you continue where you've gone, you're
9     going to end up in prison.  And Ms. Halla-Valdes is right.  You
10    get caught with a gun again, that's a mandatory 15.  And it
11    goes up from there.  That's not a life for a person.  Your kids
12    deserve better.  You deserve better.  But it's -- it -- really,
13    the key is in your hand.  It always is.
14        I know you came from a difficult part of Chicago.  But
15    think of all the people that come from the same part of Chicago
16    that don't turn to the life of crime, that do well.  And you
17    have that potential as well, so use it.  Don't end up as a
18    person that just gets locked up forever.  As I said, I think
19    this sentence is -- then accomplishes those important goals of
20    sentencing.
21        You have the right to appeal your revocation -- or your
22    sentence or your conviction, and your attorney will talk to you
23    about possible grounds to appeal.  If you can't afford the cost
24    of an appeal, the Court will assist you so you can file in
25    forma pauperis and not have to pay those costs.  But if you

```
 1   choose to appeal, you have to file a notice of appeal within 14
 2   days of the entry of the judgment.  That will likely happen in
 3   the next day or two.  If you fail to file a timely notice of
 4   appeal, you would lose that right.  Do you understand those
 5   things?
 6            THE DEFENDANT:  Yes, your Honor.
 7            THE COURT:  Other count is dismissed.
 8       And, Mr. Humble, have I omitted anything?  Is there
 9   anything else I need to address?
10            MR. HUMBLE:  Not from the Government, no.
11            MS. HALLA-VALDES:  No, Judge.
12            THE COURT:  Ms. Halla-Valdes?  Okay.  This matter is
13   then concluded.
14       Is there someone in back, I think a family supporter, did
15   you want to say something?
16            MR. JONES:  Good afternoon, your Honor.  I'm Nayshun
17   Jones.  I'm Raymon Fuller's older brother.  I'm going to get
18   out of the military in December, did five years.  I have his
19   beautiful kids with me, and I just wanted to know if he would
20   be able to give them a hug before --
21            THE COURT:  You know, that's really up to the court
22   security officers.  And I'm -- I will leave it up to them
23   because I just don't want to interfere in the security that
24   they're responsible for.
25            MR. JONES:  Yes, sir.
```

```
 1              THE COURT:  Let me just say thank you for your
 2     service.  And I don't know if -- you know, they'll make a
 3     judgment based on the training and policies they have.
 4              MR. JONES:  Yes, sir.
 5              THE COURT:  Okay?
 6              MR. JONES:  Yes, sir.
 7              THE COURT:  Thank you.
 8              (At 1:53 p.m. the hearing ended.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                      C E R T I F I C A T E

 2

 3                 I, JENNIFER L. STAKE, RDR, CRR, an Official

 4    Court Reporter for the United States District Court for the

 5    Eastern District of Wisconsin, do hereby certify that the

 6    foregoing is a true and correct transcription of the audio file

 7    provided in the aforementioned matter to the best of my skill

 8    and ability.

 9

10

11    Dated this 3rd day of March, 2023.

12    Milwaukee, Wisconsin.

13

14

15                       Jennifer L. Stake, RDR, CRR
                      United States Official Court Reporter
16                     517 East Wisconsin Avenue, Room 324
                              Milwaukee, WI   53202
17

18                     Jennifer_Stake@wied.uscourts.gov

19

20

21

22    ELECTRONICALLY SIGNED BY JENNIFER L. STAKE
      Official Court Reporter, RDR, CRR
23    _____

24

25
```

18